Hi, everyone. Thank you for gathering remotely today. This is Judge Menasche. I'm joined on the phone by my colleagues Judge Katzmann and Judge Parker. We have three cases on the calendar today. Two will be taken on submission and one will be argued. The cases taken on submission will be 1929-18 and 1934-07 together, United States versus El Faro, and then 2031-24, Thomas v. Martin Givens. So we'll proceed to the argued case, which is No. 20-1683, Naimoli v. Ocwen Loan Servicing. Mr. Marino. Good morning, Your Honor. Thank you. Go ahead. May it please the Court. My name is Javier Marino. I'm counsel for Plaintiff Appellant Kim Naimoli. This is a case about a woman who wants to keep her home and make mortgage payments, and due to her mortgage loan servicer's refusal to implement a loan modification, she's unable to do so. The District Court below incorrectly held that Ocwen had no obligation to fix its errors under the Real Estate Settlement Procedures Act, and in doing so, impermissibly narrowed this Consumer Protection Statute and stripped homeowners of key protections that they are entitled to under RESPA. There are two principal reasons why this Court should find in favor of Ms. Naimoli and overturn the District Court's order granting Ocwen's motion for summary judgment. The first principal reason is the District Court erred in holding that a loan servicer is obligated to only correct errors which involve the receipt of or making of payments. When Congress passed the Dodd-Frank Act, Congress amended Section 6 of RESPA to significantly expand the scope and the umbrella of errors which a mortgage loan servicer is obligated to correct on a borrower's account. In amending Section 6 of RESPA, Congress indicated that not only is a mortgage loan servicer obligated to correct errors regarding the allocation of payments, but in addition to that, a mortgage loan servicer is obligated to correct errors relating to avoiding foreclosure and to correct errors relating to any other standard servicer duty. Accordingly, the District Court's holding was at odds with the statute itself. Congress, through the Dodd-Frank Act, empowered, created, and empowered the Consumer Financial Protection Bureau to enact a rulemaking process, a rulemaking and regulatory error notice process by which borrowers, like Ms. Naimoli, can notify their servicer of errors relating to the service of the account. And through this process was how the notice of error mechanism, the statute at issue here, 12 CFR 102435 was enacted. In enacting the statute, the CFPB created 11 subcategories of errors which a loan servicer is obligated to fix on an account. Three of the 11 errors directly relate to loss mitigation. Now, this in and of itself supports a conclusion that loss mitigation is related to servicing. But even going beyond that, the CFPB specifically enumerated an 11th category, which is the catch-all category, which is at issue today in this case. And this category is any error relating to the servicing of the loan. Now, the CFPB noted that Congress intended for this to be a fluid and far-encompassing statute. And in its rulemaking process, the CFPB explained what it means to be related to servicing. And in its explanation, the CFPB noted that not only does this encompass what's defined as servicing under RESPA, which is the receipt of a make and a payment, but it goes well beyond that. The CFPB noted that this also includes, and this also incorporates what's defined in Section 6 of RESPA, which was just discussed at the outset here. And going beyond that, the CFPB, they made it a point to indicate that a mortgage loan servicer has an obligation to mitigate losses on defaulted mortgage loans, otherwise, loss mitigation. Accordingly, not only was the district court's holding at odds with the plain language of the statute itself, it was also at odds with the CFPB's problem. It's not everything related to loss mitigation, right? I mean, you even say that there is a separate regulation that addresses whether they've correctly made loss mitigation determinations on the merits. You think that this is just about errors in the processing of the paperwork, right? Correct, Your Honor. And that actually brings me to my second point here, which is the district court also erred in making a determination that this case is about challenging the correctness of the decision, as opposed to the implementation of a loan modification agreement. In Aquin's own words, it was after a careful review of Ms. Naimoli's testimony, they promised her, they said, you will receive a permanent modification if you make the three trial modification payments. She made the three trial modification payments. Well, they did say that there was this issue about recording that might be a problem, but that they were working on it. Didn't they say that? Yes, Your Honor. That's correct. And that was... And so if we're deciding as part of this case, I suppose, whether it was their responsibility to correct the recording mistake. But, you know, if the recording mistake was not the fault of the servicer, then they would have been justified in not completing the loan modification, right? So it sort of goes back to who is responsible for correcting the recording mistake. Well, Your Honor, we would submit here, in this case, Aquin was the only entity that had the power and the ability to record the mortgage loan instruments. And it was Aquin themselves who indicated that they would not be able to implement the loan modification without recording the mortgage title documents. But in this case, Your Honor... Is that right? Is Aquin really the only record the mortgage? Well, yes, Your Honor. Wouldn't Naimole herself be able to record the mortgage? Maybe just a factual question, like, is it really right that Aquin is the only one able to record the mortgage? Well, in this case, Your Honor, Aquin provided a specific set of instructions for Ms. Naimole to follow. They told her, we will prepare the documents. We will mail them to you. All you need to do is execute the documents and return them to us, and we will record them for you. Now, in this case, Ms. Naimole followed those instructions to a T. She executed the documents. She returned them to Aquin. We have a UPS proof of delivery. And Aquin, to this day, cannot find those documents. And Aquin... Right, and that's one of the errors that Ms. Naimole brought to their attention is that we sent you the documents and you failed to record them, right? So it's not just the failure to make the loan modification, it's also to record the instruments. That's correct, Your Honor. And it was Aquin's loss of these mortgage title documents that resulted in their failure to implement the loan modification agreement. And again, this is why this case... This case is not about challenging the correctness of a decision. This case is about Aquin's failure to implement the agreed-upon loan modification agreement. And the fact that Aquin issued a denial letter, it does not convert this case into one challenging the correctness of a decision. The evaluation was already complete. All that was left was for Aquin to implement the agreement. Can I ask you a question? This is Judge Hatson. Going back to loss mitigation, can you help me understand? There seems to be some distance between you and the amicus brief, which I understand. I use that loss mitigation-related errors are not excluded at all. While you seem to concede that some loss mitigation-related errors are indeed excluded from the NOE provision. If I'm correct in that understanding, do you think that the amicus is correct? And if so, why? Your Honor, here in this instance case, we wanted to assist the court in focusing on the issue at hand, which was the implementation of the loan modification agreement. And both the amicus brief and our brief are in agreement that loss mitigation is related to servicing. The only exclusion that we indicate are notices of errors which challenge the correctness of a loss mitigation decision, which for that there is the appeal process under 102441H. But that's not at issue here. Ms. Simoni, she's not challenging the correctness of the decision. Aquinn already got that far. This is about the process. Ms. Simoni is exactly the intended beneficiary of RESPA, of the Dodd-Frank Act. You don't dispute that she'd be ineligible for the loan modification if the instruments were not recorded, do you? And that's not something that they made up. That's accurate, right? That is something correct, Your Honor. That's something based on their internal guidance. I understand that that's a mistake on their part, but it wouldn't be an impermissible reason to deny a loan modification because the instruments had not been recorded. No, it would not, Your Honor. But it would be and undertake a process to record those instruments and completely botch that process in losing the documents and then rely upon their own failures to refuse to implement a loan modification agreement. Now, the near issue... You're over time, but you've reserved time for rebuttal. I have one question. Doesn't the statute make a showing of damages something that's required? Yes, Your Honor. A borrower can either demonstrate actual damages or the borrower can demonstrate a pattern or practice of non-compliance with RESPA. Since we're... But you are not pressing a damage claim at all here, right? No, we are, Your Honor. We are not conceding the damages point. Our focus here, which is what we felt was the most important issue to bring before the court, was the lower court's determination that AQUIN had no duty at all, regardless of a finding of damages, to implement the loan modification agreement. Well, would you concede that if damages were an essential element of this, of your claim, you haven't met that, right? Because you essentially waived it in your brief. There's no real appropriate discussion of damages in your brief. Well, Your Honor, firstly, if this court were to find a viable claim under 102435, it would support a conclusion that AQUIN has engaged in a pattern of practice of non-compliance with the RESPA statute. The lower court found that there were issues of material fact as to at least three different violations under the request for information statute. And again, secondly, Your Honor, we would not concede that there's been no finding of damages here. The main issue we wanted to present before the court was that last mitigation is related to servicing. Where was the finding of damages? Do you mean in the lower court's opinion, Your Honor? In the record. Well, AQUIN's refusal to correct the implementation of the loan modification agreement kept Ms. Naimoli in default and prevented her from being able to save her home and continue making mortgage payments. It was AQUIN's refusal to fix it that perpetuated this error, which is still ongoing as of today. She hasn't made any mortgage payments for a number of years. Is that correct? That's correct, Your Honor. And the only reason why that's the case... How many years? I believe it's been about 10 years, Your Honor. But the only reason why she hasn't been able to is because of AQUIN's refusal to implement the agreement. That's all she wants to do. She wants to save her home. She wants to be making mortgage payments. But AQUIN failed its standard servicer duty and prevented her from being able to do so. Thank you. Since we're interpreting if PB's statute and regulations, wouldn't there be some sense in soliciting their views, not about how this particular case should be decided, but about how they view the statute and the regulations? Can you repeat your question, Your Honor? I'm sorry. It didn't come through clear. You know, we've been interpreting the CFPB, right? Statutes and regulations. Wouldn't it make some... Wouldn't there be some value in soliciting an amicus brief from them, not about how this case should come out, but about the statute and regulations? Yes, Your Honor. I'm sure that would have been helpful to solicit guidance from them. But we would submit that the statute itself, the amendment to Section 6 of RESPA, and the notice of error mechanism and the CFPB's rulemaking process, in and of itself, are more than enough to support a conclusion that loss mitigation is related to servicing. And AQUIN has an obligation to implement the loan modification agreement. Thank you. Thank you, Your Honor. Okay. Thanks very much. So you've reserved time for rebuttal. So we'll hear from you again, but let's turn to the appellee, Ms. Jacobs. Good morning, Your Honors. May it please the defendant's appellee, Austin Loan Servicing. Now, the main issue in this case is whether the purported notice of error sent by appellant relates to a covered error under Section 1024.35 of Regulation X. It's clear that the requirements of that section are only triggered for certain categories of errors, and the scope is not unlimited. Here, as appellant argued, appellant claims the errors complained of are covered under the catch-all, which is found in Section B11 of 1024.35. Now, the only issues raised in the notice of error relate to the denial of the loan modification, a category that's not covered under 1024.35 or its catch-all. In fact, a borrower who disputes a loan modification decision is specifically protected under Section 1024.41 of Regulation X, and that section provides a specific statutory mechanism to dispute a loan modification decision, and this is the section here that provides a remedy for appellant, not 1024.35. It's clear that the purported notice of error related solely to Aukland's decision not to modify appellant's loan, and it's also clear that a permanent between the parties beyond the terms of the trial modification plan. Well, sorry, didn't the notice of error also note that she had sent in the instruments for recording and that Aukland had failed to record them? I mean, that is an error that doesn't go to the merits of the decision as to grant loan modification, doesn't it? Right. No, the notice of error, just to note for the Court, the subject is notice of error pursuant to 1024.35c11 for improperly denying a loan mod, and yes, the letter does detail the communications between the parties regarding the loan mod and the reason for the denial, and the appellant does claim in that letter that due to Aukland's alleged failure to record the documents, they improperly denied a loan mod. So, it's our position and the position of the variation and part and parcel of her argument that Aukland failed to properly approve her for a loan modification. It's not a separate argument. I understand the point you're making, but if the notice of error had been written slightly differently and maybe said directly, the error is you requested documents from me for recording, I sent you the executed documents, and you failed to record them, would that be an error that would be covered by 124.35 or 1024.35? No, I don't think so in the context of this case. The issue of recording the documents was only raised due to the loan modification review and the ultimate denial. So, the facts of this case are not present. Well, yeah, but lots of errors under 1024.35 will only come up because the borrower's attempting to accomplish something else and then an error is noticed, but that doesn't mean those things aren't errors, right? I mean, doesn't everything come up? Like, does all errors become noticed because there's some course of dealing between the borrower and the servicer and something that they want to accomplish can't be accomplished because it turns out a mistake has been made? Right, you know, but again, in the context of this case, that error was only discovered due to the loan modification. You know, I can't say because I don't have a letter here. Okay, I mean, you can understand that there's a hypothetical then. So, I just sort of hypothetically, if there were no loan modification and Ms. Namoli had just discovered that the documents were not properly recorded and said to the servicer, you should record them, the servicer said, okay, we'll take care of that. Here are documents to execute and she sent them back and the servicer received them, but then failed to do the recording. Would that not be an error? Right. I don't know if it'd be an error that a loan servicer would be responsible for. As the court had noted earlier, the recording of loan documents, you know, is not only the obligation of the loan servicer, it would have been the obligation of the lender and it could also be the obligation of the borrower to correct that issue. Right, but in this case, I mean, in this case, the OCWIN did say, we'll take care of the recording and they sent her non-executed documents and they said, execute these, send them back to us, and we will do the recording to fix this problem. And then they didn't do it. I mean, weren't they acting as a servicer when they were doing that or were they just doing some kind of servicer duty? They were acting as a servicer, but again, we then have to turn to, you know, the definition of servicing under RESPA, which is found in 2605 I-3, which, you know, really relates to the, you know, the payment for principal and interest on the loan. Yeah, I understand, but the statute then says, you know, restrict the errors, but the errors can relate to other standard servicers' duties. It doesn't say it relates only to servicing. I understand that the regulation says errors related to servicing, but then the CFPB and the preamble to that regulation said it's not just servicing as defined in the statute, it's a broader duty. So, that's the question we're trying to decide, how broad it is. So, why wouldn't it be that if this is something that a servicer would do, which is record the documents that haven't been recorded and you fail to do so, that that isn't an error related to a servicer's duty or an error related to their servicing of the loan? Yeah, you know, again, I think it relates back, you know, to this case, and we're not just dealing with the failure to record loan documents. We're dealing with the claim that there was an improper denial of a loan modification due to the title issue, which prevented the loan modification from being approved. Right, but I was just sort of asking you just hypothetically to abstract from the loan modification. So, if I'm just considering the failure to record the documents in isolation, it sounds like you're not sure. That might very well have been an error on the part of the servicer that would have been covered, but you're saying because in this case, it was part of the denial of the loan modification, therefore, it doesn't count. Is that right? Exactly. Let me ask you a question. What's your position on damages? Yeah, I mean, our position on damages here, as the lower court found with regard to the request for information, the court dismissed the request for information claims finding that there were no damages, and as the court noted, the appellant did not raise in her brief her argument that there were any damages here. You know, it's our position that even if there was a covered error under Regulation X, that we properly complied with our obligations under RESPA and Regulation X, and there were no damages, you know, to properly proceed with the claim. Is it your position that absence of damages is fatal to this claim? Or is there an alternative way of prevailing, as your adversary suggested? No, I don't think there's an alternative way of prevailing. You know, even if the notice of error met the requirements, again, of a covered error under 102435, we properly responded to the notice of error, you know, fulfilled our statutory and regulatory duties, and there are no damages here to proceed with the claim. There would need to be damages in order to proceed with the claim under RESPA and Regulation X. Just following up, Judge Manasci, so our regulations are issued pursuant to a statute, and it's the text of the statute that we focus on, and I'm still trying to understand, you take the position that the catch-all applies only to errors relating to servicing, as defined by the pre-Dodd-Frank version of RESPA. How can you square that with the Dodd-Frank amendment itself, which really imposed a requirement, as Judge Manasci alluded to, a servicer shall not fail to take timely action to respond to a borrower's request to correct errors relating to avoiding foreclosure or other standard servicer's duties? Your Honor, I think with regard to that, first of all, you note that a servicer must respond to properly avoid foreclosure. That section of... Or other standard servicer's duties. Right. Well, if you read the official interpretation regarding other standard servicer duties... Are those descriptions of the process by which the agency promulgated the rule? No. These are official interpretations of the final rule, and actually in there, the Bureau noted that the final rule was consistent with the existing process for responding to QWRs under Section 6K, which already included a catch-all. So, you know, including the catch-all provision in the final rule under B11 was consistent with the DOD requirements under Section 6K. And, you know, you can't read 6K and Regulation X, you know, separate and apart. Regulation X merely implemented 6K and provided further details of policies and procedures that loan servicers need to take, you know, to protect borrowers. And, you know, it's our position that adding the catch-all was consistent with the definitions and the procedures in the already existing Section 6K of RECFA. Let me ask you this. Under your... In your view, what happens if an NOE asserts both a covered error and a wrongful denial of mitigation request? Is the entire NOE invalid, or does the server services still have to respond to the covered error? You know, I think that, obviously, it would depend on the context, you know, of that particular case. Obviously, in this case, as the district court held, the argument that Aukland failed to report loan modification documents was a variation of the argument that the loan modification was invalid. So, I think it would depend on the circumstances, you know, of the case and which, you know, which type of errors were asserted under the notice of error. Thank you. Can I ask you a question about the scope of the two regulations? So, you emphasize that 1024.41 is about loss mitigation and 1024.35 is about errors related to servicing, and they B9 and B10, they both cross-reference 1024.41. They say it would be an error covered by 1024.35 to make the first notice or filing for a foreclosure process in violation of 1024.41 F or J, and subsection 10 says moving for foreclosure judgment or sale in violation of those errors relating to the servicing of a borrower's mortgage loan. So, don't we just see on the face of the regulation that the regulation considers some violations of 1024.41 or some loss mitigation violations to be errors relating to the servicing of a borrower's mortgage loan? Great. That is correct. Those specific errors, though, under 1024.39, 1024.41 are specific errors related to notices for foreclosure and the like that you can see, and those are not the errors that were asserted in this case. I understand. I guess just the point I'm making is servicing for purposes of the regulation can't be narrowly defined to be servicing to the exclusion of loss mitigation because the are errors related to the servicing of a borrower's mortgage loan. Right. So, just to come back to whether the CAC law includes other errors related to loss mitigation. Right, right, right. The specifics in 1 through 10 do reference some of the loss mitigation procedures under 1024.41. However, letters and complaints regarding the failure to approve for loan modification or evaluations in loss mitigation are not covered under those sections, and we actually have to look to the official interpretations again. When the Bureau actually specifically solicited comments as to whether to include as an error a servicer's failure to correctly evaluate a borrower for loss mitigation in the final rule, and the final rule states that the Bureau declined to include errors related to loss mitigation as covered error, and it, quote, believes that the appeals process set forth in 1024.41H provides an effective procedural means for borrowers to address issues relating to loss mitigation. I mean, it seems to me there's a distinction. 1024.41 goes to the merits of the loss mitigation decision, and 1024.35 addresses errors in the process that might lead up to it. Do you think that's a fair distinction? You know, I don't really. I think that if we're talking about errors related to a loss mitigation decision, the remedy for a borrower is specifically set forth in 1024.41. Well, I mean, but except for the ones that are set forth in B9 and B10, which obviously are errors related to 1024.41, but you would still proceed under 1024.35. Right. And those under 9 and 10, 1024.41F, you know, those are not issues related to, you know, improperly denying a loan modification. That is separate. If we're talking about, you know, a borrower's complaint, you improperly failed to approve me for a loan. So you're saying 1024.41 is about improperly denying the loan modification, but there still could be errors that are sort of procedural on that don't involve the ultimate decision that would be covered by 1024.35. And your position is that this case is only about the merits determination, improperly denying the loan modification, and it's not about allegations in the complaint raised that any of the other sections have, you know, have been violated by Auckland, you know, regarding 7, 8, 9, or 10 of 1024.35. Thank you very much. If my colleagues don't have further questions, we'll turn back to the appellant on rebuttal. Was I out of time, Your Honor? I assume I was. Yeah, you were over time. But thanks very much. Mr. Marino for two minutes. Thank you, Your Honor. The first issue which I'd like to address is regarding the failure to record the title on documents. As is noted in the record, this, Auckland had been working on the title issues as early as the beginning of 2015, well before the last mitigation offer at issue. And we would submit that this was something that was a recurring issue in Auckland's own deposition transcript. They admit and they indicate that this is something that they were working on internally. Could you just address directly the point that Ms. Jacobs made, which is that the notice of error that you filed was to say that you were improperly denied the loan modification, and you mentioned the recording of the documents only in the course of explaining that error, and it's not a separate error. Do you think that that is an accurate account of the notice of error? Well, yes, Your Honor. The purpose of sending the notice of error and the reason why this issue came up was because of Auckland's failure to record the title on documents. However, Auckland's issuance of a denial letter did not convert this case to one challenging the correctness of the decision. And support for this can be found in two sections within Regulation X. One section is 1024-41-K5. That indicates if there's a servicing transfer while a loan modification offer is pending, the transferee servicer is obligated to honor the offer. If in that example, the transferee servicer issued a denial letter and refused to honor the offer, that would clearly be an error in the implementation of the agreement, and the borrower would certainly have rights to bring that error to their attention. The mere issuance of the denial letter would not mean that the borrower is entirely stripped of their rights. So we would submit again, Your Honor, this is about the implementation, not the correctness of the today. It's because Auckland failed in its standard servicing duties. It failed to record the mortgage loan instruments. It failed to implement the loan modification. This caused Ms. Nymoli to lose out on the only opportunity she had to save that home. It's kept her in default. It's kept her in an ongoing risk of losing her home in foreclosure. It's caused her emotional distress, and she is the exact intended beneficiary under the Dodd-Frank Act. I have nothing further. Unless Your Honor has any further questions, I have nothing further. Thank you. Okay. Thank you very much, Mr. Marino. The case is submitted. And because that is the only case we have to be argued today, we are adjourned. Thank you. Court stands adjourned.